United States District Court
Southern District of Texas
**ENTERED**
August 04, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GERRY MONROE,                          §
                                       §
        Plaintiff,                     §
                                       §
v.                                     §        CIVIL ACTION NO. H-19-1991
                                       §
HOUSTON INDEPENDENT                    §
SCHOOL DISTRICT,                       §
                                       §
        Defendant.                     §

MEMORANDUM DECISION AND ORDER

On July 26, 2021, this case came on for trial to the Court
after the parties both waived a jury demand.  The case was filed
by Gerry Monroe in June 2019 to challenge his exclusion from the
facilities and meetings of Defendant Houston Independent School
District ("HISD").  Following evidentiary hearings on July 11 and
December 10, 2019, the Court found that HISD's limited facilities
ban did not violate Monroe's constitutional rights because it was
a reasonable response to Monroe's true threat--made in an April
11, 2019 School Board meeting--of an intent to commit an act of
unlawful violence against a school principal.  Despite the
constitutionality of the facilities ban, the Court found
unconstitutional certain language in a July 15, 2019 letter from
HISD to Monroe describing conduct that HISD's administration
considered to violate HISD's written policies.  The Court therefore

preliminarily enjoined HISD from punishing Monroe "on the basis of Plaintiff's engaging in otherwise lawful 'derogatory' speech/expression, 'offensive' speech/expression, 'name calling,' and similar expressive conduct containing offensive or derogatory remarks about any HISD Board member or employee, while Plaintiff is in HISD's facilities or campuses."[1]  The facilities ban expired on its own terms at the end of 2019.  Monroe later withdrew his claims for monetary damages, and the parties agreed that the bench trial was required to decide the sole remaining issue:  whether Monroe is entitled to have the terms of the preliminary injunction issued as a permanent injunction prohibiting HISD from punishing him for the conduct described in the last part of the July 15, 2019 letter.  The Court concludes for the reasons that follow that this case is now moot.

## I. Findings of Fact

The Court adopts its findings of fact from its Memorandum and Order Denying Preliminary Injunction entered July 19, 2019 (Document No. 41) and Memorandum and Order Granting in Part and Denying in Part Plaintiff's Second Amended Motion for Preliminary Injunction entered December 11, 2019 (Document No. 82).  The following additional findings of fact are based on a preponderance

---

[1] Document No. 82 at 17-18.

of the evidence admitted during the bench trial and, pursuant to Rule 65(a)(2) and as agreed by the parties, the evidence admitted at the two evidentiary hearings on Monroe's preliminary injunction motions.

The speech restrictions that Monroe challenges as unconstitutional are found only in HISD's letters to Monroe dated July 10 and July 15, 2019. Those letters identified a list of speech and conduct--including "name calling" and wearing clothing or using signs bearing "offensive and derogatory remarks about any HISD Board member or employee"--that "HISD considers . . . does not meet the standard for 'appropriate' conduct and also . . . disrupts and interferes with proceedings, as set out in existing HISD policy, including but not limited to HISD Policies BE(LOCAL) and GKA(LEGAL)."[2] The July 15 letter was a revision of the July 10 letter in which HISD deleted the opening paragraph of the July 10 letter to which Monroe had objected at the July 11 evidentiary hearing. The speech restrictions on Monroe described in the July 10 and July 15 letters are identical.

HISD's Board of Trustees (the "Board" or "School Board") is responsible for setting the policy for HISD and hiring a Superintendent to run HISD's day-to-day operations with the assistance of a staff of administrators. The Board promulgates

---

[2] Document No. 63-1, exs. B, C.

its written policies, including the BE(LOCAL) and GKA(LEGAL) policies referenced in the July 2019 letters, through a formal process that includes public notice and a vote. Those formal written policies do not contain the language to which Monroe objects, and Monroe has not challenged the constitutionality of any of HISD's formal policies adopted by the Board. Instead, Monroe challenges only portions of the interpretation of HISD's formal policies expressed in the July 2019 letters, which the Court found unconstitutional when it preliminarily enjoined HISD from punishing Monroe for engaging in otherwise lawful derogatory or offensive speech or expression.

Eugene Salazar, an HISD administrator in the Business Operations department, is the signatory on all of the letters HISD sent to Monroe in relation to the facts of this case, including the July 2019 letters. Salazar wrote the original criminal trespass warning on April 11, 2019, in his role as Business Operations Officer. Salazar signed the next four letters to Monroe in his capacity as HISD's Operations Administrative Officer, Business Operations. These four consisted of an undated letter sent to Monroe in June 2019 that identified a variety of ways Monroe could continue to participate in HISD activities while he remained subject to the facilities ban; the July 10 and July 15 letters that are the subject of Monroe's First Amendment challenge; and a February 13, 2020 letter stating that the July 15 letter

"was never intended to be and does not operate as an amendment to existing HISD policies" and asserting that "[n]either HISD management nor the HISD Board of Trustees has taken any action against you based on any language contained in the July 15, 2019 letter, and neither HISD management nor the HISD Board of Trustees will in the future take any action against you based on any language contained in the July 15, 2019 letter."[3] When the Court denied the parties' cross-motions for summary judgment, it observed that nothing in the summary judgment record, which included the February 13, 2020 letter, "unambiguously disavowe[d] HISD's prior assertion [in the July 15 letter] that it considers 'derogatory' and 'offensive' speech and conduct and 'name calling' to be in violation of HISD's written policies" such as to render the case moot.[4] Lastly, Salazar sent to Monroe a letter dated March 10, 2021, signed in his capacity then as Chief Operating Officer, Interim.  The March 10 letter reiterated some assertions from the February 2020 letter and then added:  "To avoid any possible confusion over HISD's position, HISD hereby retracts, vacates, and nullifies the July 15, 2019 letter beginning from the third bullet pointed paragraph starting with 'With respect to your

_____

[3] HISD's Ex. 22.

[4] Document No. 106 at 18.

5

conduct' and continuing through the conclusion of the letter."[5] Thus, in behalf of HISD Salazar did then unambiguously retract, vacate, and nullify the language of the July 15 letter that was the basis for the Court's issuance of a preliminary injunction.

As Operations Administrative Officer, Salazar reported to Brian Busby, HISD's Chief Operating Officer, who in turn reported to Interim Superintendent Grenita Lathan.  When he became Chief Operating Officer, Interim, Salazar reported directly to Interim Superintendent Lathan.  Salazar wrote all of the above-referenced letters following a consultation process with others in the HISD administration, but the School Board itself did not direct, authorize, approve, or ratify any of the letters.  Salazar testified that he understood he had the administrative authority to communicate the HISD administration's position to Monroe.

The President of HISD's School Board, Dr. Patricia Allen, testified at the bench trial.  Dr. Allen, a third-generation educator herself, became a School Board member in January 2020 and was elected President of the Board in January 2021.  She testified that during her tenure on the Board, the Board has never made any formal decision or taken any formal action relating to this lawsuit; that she did not authorize the letters Salazar wrote to

---

[5] HISD's Ex. 23.

Monroe; and that the Board has not issued any letters to Monroe during her tenure.

After the facilities ban expired by its terms in December 2019, Monroe resumed his regular attendance and advocacy at HISD's Board meetings, first in person and then virtually after the COVID-19 pandemic caused HISD to switch to remote meetings. At the Board meetings, Monroe on occasion accused the Board or HISD employees of misconduct including various crimes, neglecting dyslexic and special needs children, and failing to address the needs of the School Board's constituents. Among other things, Monroe told the Board that he was going to deliver evidence of criminal activity to the FBI; that "next month it's going to feel like Pearl Harbor"; that people who mistreat special education students "should go straight to hell"; and that Board members would not get African American votes. Despite his at times forceful, direct, and harsh criticism, Monroe did not yell, scream, or make threats of violence.

At the trial Monroe testified that since the end of 2019 he has continued his college education, expects to graduate from Lamar University in December 2022 with a degree in criminal justice, and plans next to enroll in law school and become a lawyer. His interest in mentoring children and efforts to improve education in HISD have continued and presently he is a candidate for election to the HISD School Board in the November 2021 election. In

addition, Monroe in the past year broadened the reach of his activism by making some 25 trips to Minnesota to work for peaceful protest and resolution after the killing of George Floyd and by working to achieve peace in the aftermath of other racially charged incidents in Cleveland, Ohio, and Lafayette, Louisiana, to which he has also traveled.  The Court finds that while Monroe's interest and fervor for improving education in HISD are as strong as ever, and while he continues to express his opinions directly and forcefully, it appears that his advanced education, broader experience, and lofty professional goals have helped him to conduct his advocacy in School Board and school administration meetings without making the mistake he did in the April 11, 2019 HISD School Board meeting that ultimately led to this lawsuit.

Indeed, Dr. Allen, who was present at all of Monroe's presentations to the School Board in 2020 and 2021, testified that she never had to cut him off or admonish him in any way; that Monroe has not violated HISD's BE(LOCAL) policy during her tenure; and that the Board neither has taken any action against Monroe for violating its policy nor plans to take any action against him. Salazar likewise testified that HISD has never enforced any restriction in the July 2019 letters against Monroe and that the HISD administration has no intent to issue any further guidance to Monroe or to take any further action against him.  The Court finds credible Dr. Allen's and Salazar's testimony that HISD's Board and

administration do not intend to take further action against Monroe in the future.

Monroe himself does not intend to repeat the threatening behavior that led to the facilities ban in 2019, which behavior he later stated was a result of his losing his temper. Nevertheless, he testified that--notwithstanding the preliminary injunction prohibiting HISD from punishing him for lawful but offensive or derogatory speech--he has not felt free to express the criticism of the HISD Board and HISD employees that he wishes to convey because he fears that he will be punished if he does. The Court is unable to find this claim credible. Monroe gave no example of what speech or conduct he felt constrained by fear of punishment not to express during the past 19 months while the preliminary injunction continued in full force and effect. Whatever putative "fear" Monroe may claim, as observed above it has not constrained him from emphatically voicing his beliefs that criminal conduct is afoot among School Board members and/or HISD employees, announcing he is making criminal referrals to the FBI, accusing the Board of presiding over mistreatment of special education students, for which the abusers "should go straight to hell," neglecting dyslexic children, and predicting that "next month it's going to feel like Pearl Harbor."

Although the July 2019 letters represented to Monroe that certain constitutionally protected speech and conduct--such as

9

"name calling" and the use of offensive or derogatory messages on clothing or signs--would violate HISD's policies, neither the Board nor HISD's management ever in fact restricted Monroe's access to HISD facilities or otherwise punished him in response to any of his constitutionally protected speech.  The only time Monroe was excluded from HISD's facilities was when HISD imposed the limited facilities ban in April 2019, which the Court found was a reasonable and constitutional response to Monroe's true threat of violence.  HISD has never excluded Monroe from its facilities or meetings since that ban expired in December 2019.

In sum, Monroe has resumed his long history of regular public criticism of HISD and its Board, and no remaining obstacle has been proved to prevent him from continuing to do so.  Monroe testified that he did not miss a Board meeting for the eight years preceding the facilities ban, and he has spoken in at least seven Board meetings since the ban expired.  Apart from the instance in April 2019 when Monroe made what the Court found to be a true threat of violence, none of Monroe's strident criticism in the years before or after that incident has ever resulted in the Board or HISD administrators interfering with Monroe's speech or prohibiting his access to Board meetings or HISD facilities. Because HISD has never punished Monroe for his constitutionally protected speech and because Monroe does not plan to repeat his threat of violence that led to the facilities ban and this

10

litigation, the Court finds from a preponderance of the evidence that there is no basis to believe HISD will punish or retaliate against Monroe in the future on the basis of his engaging in constitutionally protected speech or expressive conduct.

## II. <u>Mootness</u>

"A case that becomes moot at any point during the proceedings is no longer a Case or Controversy for purposes of Article III, and is outside the jurisdiction of the federal courts." <u>United States v. Sanchez-Gomez</u>, 138 S. Ct. 1532, 1537 (2018) (citing <u>Already, LLC v. Nike, Inc.</u>, 133 S. Ct. 721, 727 (2013)) (internal quotation marks omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" <u>Already</u>, 133 S. Ct. at 727 (quoting <u>Alvarez v. Smith</u>, 130 S. Ct. 576, 580 (2009)).

HISD contends that this case is now moot following its withdrawal of the portion of the July 15, 2019 letter that Monroe challenged and the Court found unconstitutional. A defendant cannot automatically moot a case simply by ending its unlawful conduct once sued, since such a rule would allow defendants to engage in a cycle of resuming unlawful conduct until they are sued, at which point a temporary pause would entitle them to dismissal

11

of the case for mootness.  Already, 133 S. Ct. at 727.  Thus, under the voluntary cessation doctrine, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  Id. (quoting Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 120 S. Ct. 693, 709 (2000)).

This heavy burden is somewhat relaxed, however, when the defendant is a government actor.  "[C]ourts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity." Sossamon v. Lone Star State of Texas, 560 F.3d 316, 325 (5th Cir. 2009), aff'd, 131 S. Ct. 1651 (2011).  This is because "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties." Id.  Thus, "[w]ithout evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing."  Id.

Monroe has not shown that the Board, which is responsible for setting HISD's policies, has violated his constitutional rights, nor does he take issue with anything written in the Board's formally enacted policies.  His only remaining challenge is to the

12

portion of the July 2019 letters written by HISD administrator
Eugene Salazar describing conduct that the HISD administration at
that time considered would violate HISD's formally enacted
policies.  Monroe has never been disciplined for any violation of
this language, and Salazar in the March 2021 letter, presumably
informed by the Court's First Amendment analysis accompanying its
issuance of the preliminary injunction, has now unambiguously
"retract[ed], vacate[d], and nullifie[d]" the portion of the July
2019 letters which the Court found unconstitutional and to which
Monroe objected.  This unambiguous retraction was issued in the
same manner, with the same level of formality, and by the same
author, as the original letters about which Monroe complains.  In
light of the presumption of good faith accorded to public servants
and the credible testimony of Dr. Allen and Salazar, there is no
basis for believing that HISD in the future will attempt to revive
the retracted guidance from the 2019 letters, particularly after
this Court has found such guidance to be an unconstitutional
restriction on Monroe's First Amendment rights.  Following the
retraction of the guidance in the July 2019 letters, Monroe is
subject only to the same formally promulgated Board policies that
apply to all persons, which policies he does not challenge.  Thus,
any fear Monroe may have of being punished for engaging in
constitutionally protected speech in the future is entirely
hypothetical, especially since HISD has never punished him for

13

engaging in constitutionally protected speech in the past. Moreover, Monroe has withdrawn his claims for monetary damages based on any past constitutional violations. There is therefore no remaining case or controversy, and Monroe's sole remaining challenge is moot.

Monroe raises two principal arguments against mootness. First, he relies on two recent Fifth Circuit cases, Pool v. City of Houston, 978 F.3d 307 (5th Cir. 2020), and Freedom From Religion Foundation v. Abbott, 955 F.3d 417 (5th Cir. 2020), to argue that the case could only be mooted by formal action by the Board as HISD's policymaker, rather than by Salazar, whom Monroe characterizes as a "lower level official."[6] These cases, however, are readily distinguishable. In Pool, two nonresidents of Houston challenged a provision in the Houston City Charter that required circulators of petitions for a ballot initiative to reside in and be registered to vote in Houston. The Supreme Court had struck

---

[6] In fact, although Monroe's counsel argued at trial that the Board should adopt a formal resolution stating that Monroe is free to engage in offensive and derogatory speech at HISD Board meetings, he also argued that it is too late in the litigation for the case to be mooted even by formal action of the Board, such that a permanent injunction is required. *But see* PETA v. USDA, 918 F.3d 151, 159 (D.C. Cir. 2019) (remanding case filed more than two years earlier for consideration of the merits and instructing that "[i]f the agency unambiguously commits to continued posting of those documents, plaintiffs' claims should be dismissed as moot, without discovery, even if USDA continues to regard its postings as voluntary.").

down an analogous law two decades earlier, but the City of Houston's petition form still required circulators to swear that they were qualified voters of the City of Houston. During the litigation, the City inserted into the form an "Editor's Note" providing that the City would accept petitions from non-residents. The Fifth Circuit observed that "[i]t is unclear who, or what body, approved the new form," and held that the Editor's Note was insufficient to moot the case because "it is not clear the City made a formal policy change. There is no evidence that the City Council approved the nonresident petition form published on the City's website, so we do not know how permanent--or legally effective--the new form and editor's note are." Pool, 978 F.3d at 312, 314. The court noted that "[t]he form itself indicates that it was prepared by the City of Houston Legal Department--not an official policymaker." Id. at 314 n.9. Pool did not hold, as Monroe seems to suggest, that a challenge to any action by any employee of a municipal body can only be mooted by a formal policy change or pronouncement by the policymaker, nor does Pool say anything about the degree of formality required to moot a challenge to a letter written by an administrative employee without approval or ratification by the Board. If Monroe were challenging a provision of a policy formally adopted by the Board, Pool would support his argument that Salazar's letter would be insufficient

to moot the case, but of course Monroe makes no such challenge in this case.

Freedom From Religion Foundation is similarly unavailing. The plaintiff in that case applied and received permission to display on the grounds of the Texas Capitol a nativity Bill of Rights exhibit advocating separation of church and state. Governor Abbott wrote a letter to the official charged with maintaining the Capitol directing that the display be removed immediately. When the plaintiff applied the following year to exhibit an identical display, the official responded that the application would be denied, citing to Governor Abbott's letter. After the plaintiff filed suit against Governor Abbott and the executive director of the Texas State Preservation Board, the defendants argued that an intervening Supreme Court decision mooted the case by making it clear that speech cannot be prohibited on the basis of offensiveness. The Fifth Circuit rejected that argument, explaining that "Governor Abbott and Mr. Welsh have only presented arguments through counsel that their behavior will change post-Matal. Importantly, they have not retracted their previous statement to FFRF that future applications for the relevant display will be denied." Freedom From Religion Found., 955 F.3d at 425. Here, of course, HISD does not rely solely on the arguments of counsel, but instead on testimony by members of HISD's Board and administration that they do not plan to take action against Monroe

in the future, and on a letter from the author of the challenged guidance that formally and unambiguously retracts and nullifies that guidance--precisely what was missing in <u>Freedom From Religion Foundation</u>.

Monroe's second line of attack on mootness is that the series of six letters that Salazar in behalf of HISD wrote to him over the course of two years is evidence of bad faith and gamesmanship that undermines any certainty that HISD will not resume its unconstitutional restrictions after dismissal of this suit. *Cf.* <u>Sossamon</u>, 560 F.3d at 325 ("*Without evidence to the contrary*, we assume that formally announced changes to official governmental policy are not mere litigation posturing.") (emphasis added). Monroe relies on two recent Supreme Court decisions enjoining state restrictions on religious gatherings during the COVID-19 pandemic. <u>Tandon v. Newsom</u>, 141 S. Ct. 1294 (2021) (*per curiam*); <u>Roman Catholic Diocese of Brooklyn v. Cuomo</u>, 141 S. Ct. 63 (2020) (*per curiam*).  In both cases, the Court rejected the argument that the dispute was moot because of a change in the state policy.

The circumstances of these cases involving state pandemic responses are strikingly different from the instant case.  In <u>Roman Catholic Diocese</u>, the majority observed that Governor Cuomo had changed the relevant classifications eight times in approximately one month, without prior notice, and that the daily nature of religious services meant that further reclassifications "will

17

almost certainly bar individuals in the affected area from attending services before judicial relief can be obtained." <u>Roman Cath. Diocese</u>, 141 S. Ct. at 68.   In <u>Tandon</u>, not only the did majority note a "track record of 'moving the goalposts,'" but the challenged restrictions still remained in effect at the time of the Court's decision.   <u>Tandon</u>, 141 S. Ct. at 1297.   Given the constantly evolving circumstances of the pandemic and the recent history of continuing policy changes, it was not unreasonable to expect future back-and-forth modifications to the state's fluid restrictions.

Here, in contrast, Monroe overstates both the extent of HISD's prior modifications and the likelihood of future violations of his First Amendment rights.   The language Monroe challenges as unconstitutional first appeared in HISD's letter dated July 10, 2019.   The July 15, 2019 letter did not change the July 10th guidance or restrictions on Monroe's conduct in any way; it merely deleted an introductory paragraph to which Monroe had objected. The February 2020 letter, the first letter written after the Court's explication of the First Amendment and issuance of the preliminary injunction, noted the expiration of the facilities ban and asserted that the July 15, 2019 letter was not an amendment to existing HISD policies and that HISD neither had nor would in the future take action against Monroe based on any language in the July 15, 2019 letter.   After the Court observed that the February

2020 letter did not unambiguously withdraw the position HISD had
taken in the July 15, 2019 letter, HISD sent its March 2021 letter,
stating that "[t]o avoid any possible confusion over HISD's
position, HISD hereby retracts, vacates, and nullifies the July
15, 2019 letter beginning from the third bullet pointed paragraph
starting with 'With respect to your conduct' and continuing through
the conclusion of the letter."[7]  Neither the February 2020 letter
nor the March 2021 letter imposed any additional restriction, not
even one, on Monroe's conduct.  Instead, the February 2020 letter
was an attempt to assure Monroe that he was not at risk of being
punished if he violated the guidance in the July 2019 letters, and
the March 2021 letter wiped the slate clean in unequivocal language
by "retract[ing], vacat[ing], and nullif[ying]" the
unconstitutional wording of the July 15, 2019 letter.  Thus, this
is not a situation in which HISD has repeatedly modified the
unconstitutional restrictions in the July 2019 letters to
facilitate continued violations of Monroe's constitutional rights
while evading court supervision.  The Court finds no sleight of
hand or "moving of the goal posts" in HISD's letters.  To the
contrary, Salazar in his letters to Monroe in behalf of HISD did
not modify the language that Monroe challenges until after the
Court's First Amendment ruling and issuance of the preliminary

---

[7] HISD's Ex. 23.

injunction, and it was then that HISD withdrew the unconstitutional
proscriptions, first by explaining that it would not enforce the
July 15, 2019 letter and then by explicitly retracting and
nullifying all of the offending language in that letter.

Similarly, Monroe has not shown any basis for finding that
HISD is likely to reimpose unconstitutional restrictions on his
speech after this case is dismissed as moot.  Monroe has been
regularly and stridently criticizing HISD's Board members and
employees for at least a decade, and the only time HISD restricted
his speech was after he lost his temper and made a true threat of
violence, which he has resolved not to repeat.  Although Salazar
testified that he has the authority to issue additional letters as
part of his regular job duties, he also credibly testified that
neither he nor the HISD administration has any intent to issue
further guidance to Monroe or to take further action against him.
Similarly, School Board President Dr. Allen credibly testified
that the Board--which has taken no action against Monroe--has no
intention of taking action against him in the future.  Particularly
in light of the Court's ruling that the language in the July 15,
2019 letter violated Monroe's First Amendment rights and the
unrebutted presumption that HISD is acting in good faith, there is
no basis for believing that HISD will choose to readopt that
unconstitutional language, which it has expressly retracted and
nullified.  The purely hypothetical possibility of such a

readoption is not enough to defeat mootness. *See* <u>Sossamon</u>, 560 F.3d at 325 ("We will not require some physical or logical impossibility that the challenged policy will be reenacted absent evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct.").[8]

In sum, Monroe has achieved his objective with the unqualified retraction of HISD's unconstitutional restrictions, and there is no remaining case or controversy between the parties regarding HISD's nullified guidance, which is the subject of Monroe's sole remaining challenge. Because the developments in this case make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," the case must be dismissed as moot. <u>Id.</u>

## III. Attorney's Fees

Monroe has requested an award of attorney's fees pursuant to 42 U.S.C. § 1988(b), which provides that in a § 1983 suit, "the

---

[8] Because there is no basis for believing that HISD is likely to reimpose unconstitutional restrictions on Monroe, the exception to the mootness doctrine for controversies that are "capable of repetition, yet evading review," which Monroe invokes in his briefing, is similarly inapplicable. *See* <u>United States v. Sanchez-Gomez</u>, 138 S. Ct. 1532, 1540 (2018) ("A dispute qualifies for that exception only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'") (citation omitted).

court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  A reasonable fee appears to be available in this case, which HISD mooted after Monroe obtained a preliminary injunction based on the unconstitutionality of language in HISD's July 15, 2019 letter.  *See* Dearmore v. City of Garland, 519 F.3d 517, 524 (5th Cir. 2008) ("[T]o qualify as a prevailing party under § 1988(b), we hold that the plaintiff (1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits.").

At the conclusion of the bench trial, the parties indicated that they would like to attempt to reach agreement on a reasonable attorney's fee to be awarded to Monroe under these circumstances. Accordingly, within fourteen (14) days after the date of this decision, the parties are requested to make appropriate disclosures, confer, and submit to the Court an agreed proposed award of attorney's fees.

IV. <u>Order</u>

For the foregoing reasons, it is

ORDERED that the preliminary injunction entered on December 11, 2019 is VACATED and Plaintiff Gerry Monroe's claims against Defendant Houston Independent School District are DISMISSED without prejudice as moot.  It is further

ORDERED that the parties shall make appropriate disclosures, confer, and attempt to reach agreement on a reasonable attorney's fee to be awarded to Monroe, and within fourteen (14) days after the date of this decision shall submit to the Court an agreed proposed order awarding such fees.  If the parties are unable to reach agreement, then Monroe within twenty-one (21) days after the date of this Order may file a motion for attorney's fees, together with appropriate proof to support same.

A Final Judgment will be entered after the Court has ruled on the parties' submission(s) regarding attorney's fees.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 4th day of August, 2021.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

23