IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GERRY MONROE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION 4:19-CV-01991 |
| | § | |
| HOUSTON INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | JUDGE EWING WERLEIN, JR. |

## DEFENDANT HISD'S RESPONSE TO PLAINTIFF'S
## MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

TO THE HONORABLE EWING WERLEIN, JR.:

Defendant Houston Independent School District ("HISD") files this response
to the Plaintiff Gerry Monroe's Motion for Attorneys' Fees, Costs, and Expenses
(Dkt. 132).  Monroe seeks a fee award in excess of $375,000.  That amount is
grossly disproportionate to any results Monroe achieved, and in fact the lion's
share of the request concerns activities and claims that the Court denied.  The
motion should be denied, or, in the alternative, the requested award greatly reduced
to reflect the realities of the litigation.

## BACKGROUND

This Court's August 4, 2021 order dismissing Monroe's remaining claims as
moot indicated the Court's willingness to consider an award to Monroe of a

"reasonable fee" based upon his partial success in obtaining a temporary injunction following remand from the Fifth Circuit. *See* Order (Dkt. 129), at 21-22. The Court ordered the parties to confer regarding Monroe's fee application. *Id.* at 22-23. This order followed comments made by the Court at the conclusion of the bench trial on Monroe's request for a permanent injunction, in which the Court indicated it would consider an award that corresponded to the time period in which the preliminary injunction was sought and granted. Monroe's tone-deaf application, perhaps not surprisingly given the conduct of the litigation, seeks virtually all fees for all claimed activities in the case—even those that resulted in no relief and that the Court found to be without merit.

Following Monroe's disclosure to HISD's counsel of time records reflecting all fees incurred in the case for which he intended to seek recovery, HISD's counsel offered to discuss narrowing the amount requested, taking into consideration Monroe's limited success and the Court's guidance regarding the potential award that would correspond to relief obtained in the form of the preliminary injunction.

Monroe responded by filing his motion and seeking fees for virtually all activity in the case, from before the time it was filed until its conclusion.

## OBJECTIONS TO EVIDENCE

HISD objects to the declaration of David Kahne (Exhibit E to Monroe's motion).  Mr. Kahne purports to be an expert on the issue of attorneys' fees and offers opinions concerning the reasonableness of Mr. Newar's hourly rate and time spent on this matter.[1]  Monroe never designated Mr. Kahne (or any other witness) as an expert.  *See* Docket Control Order (Dkt. 86) (setting expert witness designation deadlines).  In contrast, HISD timely designated its attorneys' fees expert. *See id.*; **Ex. B** (HISD Expert Designation).

The Federal Rules of Civil Procedure require timely disclosure of expert witnesses.  FED. R. CIV. P. 26(a)(2).  So did this Court's Docket Control Order. (Dkt. 86).  As the Federal Rules further explain, if a party fails to timely disclose an expert witness as required, "the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).

Monroe offers no explanation or justification for his failure to disclose his attorneys' fees expert at any time prior to the filing of his motion for attorney's fees.  The Court should therefore exclude Mr. Kahne's declaration. *See Butler v. Delta Air Lines, Inc.*, No. H-15-3682, 2017 WL 9249492, at *8 (S.D. Tex. July 26,

---

[1]Mr. Kahne offers no opinions as to the reasonableness of the rates charged or fees generated by Mr. Newar's co-counsel, Mr. Herlong, or any sought expenses (including paralegal time).  Thus, even if the Court considered Mr. Kahne's affidavit, there would be no expert support for any award of fees related to work performed by Mr. Herlong or a paralegal.

2017) (holding claim for attorneys' fees "fail[ed] as a matter of law" where plaintiff failed to timely designate attorneys' fees expert), *report and recommendation adopted*, 2017 WL 4003429, at *1 (S.D. Tex. Sept. 12, 2017) (overruling objection to dismissal of attorneys' fees claim).

In the alternative, if the Court is inclined to consider the testimony of an undesignated expert witness, HISD objects to Mr. Kahne's declaration as conclusory, speculative, and insufficient to carry the burden of establishing the reasonableness and necessity of the fees being requested. "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991). Yet Mr. Kahne's declaration provides little more than his credentials and his subjective opinions about Mr. Newar's work. Among the many flaws in Mr. Kahne's analysis are the following:

- Mr. Kahne's single-sentence statement that "the time spent by Mr. Newar is reasonable" is wholly conclusory. Mr. Kahne offers no analysis of the scope of Mr. Newar's work in relation to the results obtained and makes no effort to account for time spent on claims that were not successful. Nor does he make any effort to account for the fact that even Mr. Newar himself wrote off portions of his own time as unproductive.

- With respect to the "skill" factor (*Johnson* factor[2] three), Mr. Kahne provides no factual basis for his assertion that this case involved "multiple close and difficult questions," nor does he identify any of those questions. Similarly, Mr. Kahne provides no explanation of what "procedural complexities" informed his analysis of this factor.

---

[2] *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

- Mr. Kahne's analysis of the purported difficulty of finding lawyers to take contingent-fee cases is wholly conclusory and merely offers unsupported speculation about the reasons unidentified lawyers purportedly decline to accept representation of clients with First Amendment claims.

- Mr. Kahne's laudatory comments about Mr. Newar's work product are wholly conclusory.  For example, Mr. Kahne cites the "uncertain, developing state of the law" and "difficult facts," but does not identify or analyze any such legal issues or facts.

- Mr. Kahne provides virtually no analysis of most of the twelve *Johnson* factors, and certainly no rigorous analysis based on any articulated set of facts or legal analysis.

Courts have rejected similarly deficient declarations by attorneys' fees experts.  *See, e.g.*, *Fat Butter, Ltd. v. BBCA USA Bancshares, Inc.*, No. 4:09-cv-3053, 2010 WL 11646900, at *5-6 (S.D. Tex. Apr. 13, 2010); *In re Frazin*, 413 B.R. 378, 398-400 (Bankr. N.D. Tex. 2009), *rev'd in part on other grounds*, 732 F.3d 313 (5th Cir. 2013); *Whitney Nat'l Bank v. Medical Plaza Surgical Ctr., LLP*, No. H-06-1492, 2008 WL 115098, at *3 (S.D. Tex. Jan. 10, 2008).  This Court should do the same.

## ARGUMENT AND AUTHORITIES

The "most useful starting point" for calculating a "reasonable fee" is the "lodestar"—"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). From that starting point, the Court should exclude "hours that were not 'reasonably expended'" because they were, for example, "excessive, redundant, or otherwise

5

unnecessary." *Id.* at 434.  The overall reasonableness of any fee award is governed by an analysis of the twelve "*Johnson* factors." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

## A.   Monroe's counsel's purported hourly rates are not reasonable.

"Evidence of the reasonableness of a proposed hourly rate must include an affidavit of the attorney performing the work and information about rates actually billed and paid in similar lawsuits." *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 853 (S.D. Tex. 2017) (citing *Blum v. Stenson*, 465 U.S. 886, 896 (1984)).   Monroe's counsel provide only conclusory assertions that they "customarily" charge rates of $500 per hour or, in Mr. Herlong's case, up to $750 per hour.

The sole evidence Mr. Newar points to as proof his purported rate is "below the market rate" is a previous employment discrimination case he tried to a jury verdict alongside his co-counsel Mr. Herlong.  *See Apache Corp. v. Davis*, 573 S.W.3d 475 (Tex. App.—Houston [14th Dist.] 2019), *rev'd*, No. 19-0410, 2021 WL 2603824 (Tex. June 25, 2021) (reversing and rendering judgment in favor of defendant).  In that case, the trial court did approve a fee award to Mr. Newar and Mr. Herlong based on $500 per hour rates.  *Id.* at 503-05.  But the trial court also discounted Mr. Newar's fees by more than fifteen percent and the appellate court further excluded roughly half of Mr. Herlong's fees based on his deficient time

records.  *Id.* at 504-05.   The Texas Supreme Court ultimately reversed and rendered for the defendant, meaning the plaintiff and her attorneys recovered nothing.  *See* 2021 WL 2603824, at *12.   Given the differences in the type of claims brought (employment discrimination versus First Amendment), the manner in which they were litigated to conclusion (jury trial versus partial bench trial), and the ultimate result (a take-nothing defense judgment), the *Apache* case is not persuasive evidence for any recovery in this case.

HISD respectfully suggests a reasonable hourly rate for this case for the lawyers involved, if the Court considers making any award, would be closer to $350 per hour than $500 (or $750) per hour.   That is in line with rates paid by HISD to its counsel.   *See* **Ex. A** (Nichols Decl.).   Such a rate would also be consistent with customary rates paid in the Houston market for experienced counsel in matters of this type.   *Id.*; *see also* State  Bar of Texas 2015 Hourly Rate Fact Sheet (2016) (attached to declaration) (median hourly rate in Houston area for lawyers with 25+ years of experience is $300); *Jung v. Accredited Mgmt. Solutions LLC*, No. H-20-0487, 2020 WL 4569994, at *6 (S.D. Tex. Aug. 6, 2020) (approving $300 per hour as reasonable and prevailing rate).

**B.      Any fee award must match the limited degree of success obtained.**

The "most critical factor" in determining a reasonable fee is "the degree of success obtained." *Hensley*, 461 U.S. at 436.  As the United States Supreme Court has explained:

> If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.

*Id.*  "That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved."  *Id.*; *see also Grisham v. City of Fort Worth, Tex.*, 837 F.3d 564, 570 (5th Cir. 2016) (where a party "obtains prevailing party status despite losing on some claims . . . the court needs to eliminate the time spent on unsuccessful claims" (cleaned up)).

HISD disputes that Monroe "prevailed" in any meaningful sense in this case, but understands and respects that the Court entered a preliminary injunction with respect to certain correspondence sent to Monroe and his counsel.  *See* Order (Dkt. 129), at 22.  To the extent the Court is inclined to award a "reasonable fee," the amount of that award should be tailored to account for that "partial or limited

8

success"—on claims that did not even exist in the case until after months of litigation.

Monroe's repeated suggestion that he obtained "substantially all of the relief he sought in bringing this lawsuit" is of no doubt a surprise to the Court and plainly belied by the record. *See* Pl.'s Mot., at 2, 11. Monroe obtained *no relief* on the claims he filed in June 2019. As a result, the criminal trespass warning that was the basis of the lawsuit when filed ran its entire course and expired by its own terms at the end of 2019, consistent with this Court's holdings that the ban did not violate Monroe's constitutional rights. And although Monroe did obtain a preliminary injunction stemming from claims he added to the lawsuit in late November 2019 concerning HISD's correspondence to him, he did not obtain further relief he expressly sought, including a permanent injunction. Even as the preliminary injunction was in effect, Monroe and his counsel continued to engage in meritless litigation activity, including by filing for summary judgment and, when they did not get the result from the Court they wanted, seeking interlocutory appeal. Monroe then abandoned any and all damages claims at the eleventh hour, apparently in order to avoid a jury trial. The Court then denied his request for permanent injunctive relief. There is absolutely no factual or legal basis for an assertion that Monroe obtained "substantially all of the relief he sought." In fact, the opposite is true, and Monroe's partial relief pales in comparison to the

litigation burdens he placed on everyone, including HISD and the Court, with meritless positions and claims.

Monroe's fee request is not tailored at all, much less tailored to any partial relief. He has requested an award of virtually all attorneys' fees allegedly incurred in connection with this matter from before the filing of the original complaint through the filing of his motion. And he has requested the Court further enhance that award by a blanket 25 percent, effectively awarding him 1.25 times his fee total. HISD respectfully suggests that in light of the tone-deaf nature of the application, an appropriate result would and should be outright denial of the request. As an alternative, any award of fees the Court could consider should follow the Supreme Court's guidance in *Hensley* and match that fee to the degree of success actually obtained—as opposed to hoped-for.

## C. Any fee award should be limited to fees incurred between November 25, 2019 and March 10, 2021.

Monroe filed this case on June 3, 2019. The parties briefed and argued Monroe's first motion for preliminary injunction, which the Court denied in its entirety. *See* Order of July 19, 2019 (Dkt. 41). Monroe appealed, and on November 25, 2019 the Fifth Circuit remanded without modifying the Court's July 19, 2019 order. *See* Order of November 26, 2019 (Dkt. 62). Monroe did not prevail in any sense on any claim through the conclusion of the Fifth Circuit appeal.

10

After remand, Monroe amended his complaint to assert, for the first time, additional claims challenging HISD's July 15, 2019 letter. *See* Pl.'s 2d Am. Compl. (Dkt. 63) (filed November 26, 2019). HISD respectfully suggests that if the Court is not inclined to deny the application outright, especially given the tone-deaf nature of the request, the preparation and filing of the Second Amended Complaint would represent an appropriate starting point for any calculation of a "reasonable fee."

This Court has held HISD mooted the new claims asserted in that amended complaint at least as of March 10, 2021, the date HISD sent Monroe a letter that "wiped the slate clean in unequivocal language." *See* Order (Dkt. 129), at 5-6, 19. HISD respectfully suggests that March 10, 2021 date represents the end point for any calculation of a "reasonable fee." To the extent Monroe incurred fees pressing his remaining claims after that date, he did not prevail or obtain any further relief. To the contrary, the additional relief he sought was expressly denied.

**D.   No fees should be awarded for matters on which Monroe did not prevail.**

Within the November 25, 2019 to March 10, 2021 window, many of the fees Monroe incurred were related to claims on which he did not prevail and did not result in Monroe obtaining any further relief. For example, Monroe seeks recovery of fees incurred briefing a partial summary judgment motion that was denied in its entirety on March 11, 2021. *See* Order (Dkt. 106).

11

**E.     Monroe's proposed reductions for "billing judgment" do not make his requested award reasonable.**

Mr. Newar opines that he has excluded from his requested award "time that could be considered unproductive." *See* Pl.'s Mot., at 7.   The sole example provided is time expended on a meritless motion to certify an interlocutory appeal. *Id.*[3]   It is certainly true that those hours were "unproductive," both because they obtained no relief for Monroe and because the case was already moot at the time. But writing off a single unproductive motion does little to make other equally unproductive work reasonable, including work on claims and other motions that were abandoned or denied.

Mr. Newar also purports to have reduced his total fee request by a blanket five percent to show "billing judgment." *Id.*[4]   Of course, Mr. Newar elsewhere proposes a *twenty-five percent upward enhancement* of the lodestar, allowing him to recapture that five percent "reduction" several times over.   And there is no explanation offered for how a five percent reduction has any meaningful

---

[3]Although Mr. Newar opines he excluded this work, his "included" time entries still include work related to the interlocutory appeal. *Compare* Pl.'s Mot., Ex. C (Newar Decl.) ¶31 (excluding interlocutory-appeal-related work from 4/20/21 through 5/12/21), *with id.* at Ex. 1, page 17 (reflecting hours spent researching "direct and interlocutory appeal" cases on 4/19/21).

[4]Mr. Newar also represents that, in a further exercise of "billing judgment," he "charged all of [his] time and [his paralegal's] time at tenth of an hour intervals, rather than at quarter hour intervals." *See* Pl.'s Mot., Ex. C, ¶30.   Yet Mr. Newar's billing records include numerous quarter-hour intervals that would not be possible if billing in six-minute increments. *See, e.g., id.* at Ex. 1 (entries of .25, 7.25, 1.75, 4.75, 8.75, 10.25, .75, 1.25, 11.25, 1.25, 3.75, 0.75, 3.25, and 4.25 hours, among others).

relationship to the actual work done in the case, including months of work before any partially successful claims were even pleaded.

**F.      Mr. Herlong's portion of the award is particularly unsupported.**

In addition to the factors discussed above, the portion of the requested fee award attributable to Mr. Herlong's efforts is particularly deficient.  Mr. Herlong's billing records are sparse and uninformative, a problem recognized by the court of appeals in the *Apache* case, which cut Mr. Herlong's requested fees nearly in half. *Compare Apache*, 573 S.W.3d at 504 ("The majority of the descriptions on Herlong's invoice contain very little detail regarding the work performed, including, for example, statements of 'meeting with client and Scott Newar' or 'attend Amazon hearing.'), *with* Pl.'s Mot., Ex. D (entries such as "7/11/2019 Attend permanent [*sic*] injunction hearing").

Mr. Herlong's records also reflect an apparent duplication of efforts.  For example, Mr. Herlong billed numerous hours for attending hearings at which he had no speaking role and attending a deposition he did not take.  Most time entries simply reflect his review of pleadings.  It is not at all clear what work Mr. Herlong performed, particularly in light of Mr. Newar's statement in his motion that it was Mr. Newar who "researched and drafted all briefs and pleadings . . . examined all witnesses . . . and argued the Fifth Circuit appeal." *See* Pl.'s Mot., at 8.  It is not

reasonable to pay two attorneys for work done only by one.  *See Hensley*, 461 U.S. at 432.

Consistent with the guidelines described above, HISD respectfully suggests the Court limit Mr. Herlong's recoverable time to hours expended attending the December 10, 2019 preliminary injunction hearing (3.5 hours), reviewing the resulting order with Mr. Newar (1.5 hours), attending the February 14, 2020 and February 12, 2021 status conferences (1.5 hours each), and reviewing a settlement proposal (0.5 hours), for a total of 8.5 hours.

## G.     The Court should not enhance the lodestar amount.

Monroe also requests a blanket 25 percent "upward adjustment of the lodestar amount."  *See* Pl.'s Mot. at 13 (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)).  The *Kellstrom* case explains why such an award is unjustifiable here.  "Attorneys' fees awards should not provide a windfall to plaintiffs."  *Id.*  The *Kellstrom* court itself characterized lodestar enhancements as being "generally inappropriate."  *Id.* at 328 n.15 (citing *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 731 (1987) (holding lodestar enhancements "should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the record and specific findings by the courts")).

14

The two reasons Monroe proffers as justifying a lodestar enhancement are the relief obtained and "the need to incentivize other private practitioners to accept such cases." *See* Pl.'s Mot., at 13.  As explained above, Monroe's limited success counsels *against* an enhancement, not in favor of one.   And the United States Supreme Court previously rejected the second justification for lodestar enhancements. *Delaware Valley*, 483 U.S. at 726-27.  No lodestar enhancement is warranted here.

**H.     The Court should not award additional fees for paralegal time.**

Monroe's fee request also includes nearly 160 hours of paralegal time categorized to "expenses."   The reasonableness of a paralegal's rate and time expended is analyzed in the same way the reasonableness of an attorney's rate and time expended is analyzed. *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 287-89 (1989).

The vast majority of the hours expended by a paralegal in this case should be excluded pursuant to the date and subject-matter limitations discussed above.  For example, the paralegal's billing records indicate she expended 17.25 hours preparing for the initial preliminary injunction hearing (all billed generically as "Prepare for hearing"), at which Monroe obtained no relief. *See* Pl.'s Mot., Ex. C (Newar Decl.), at Ex. 1 (pages 20-21).  Even within the appropriate date range, the

supplied billing records are too vague to be of any use in assessing reasonableness. *See, e.g.*, *id.* (entries such as "Hearing Prep," "Prepare fees," and "Trial Prep").

*    *    *

In sum, the correct result and message for the application would be to deny it.  If the Court looks beyond the tone-deaf nature of the request, then under the guidelines suggested above, any fee award entered would be limited to no more than 68.75 hours of attorney time[5] at a reasonable hourly rate.  If those hours were multiplied by the suggested reasonable rate of $350, the total fee would amount to $24,062.50.  That sum would be far closer to a "reasonable fee" than the more than $375,000 Monroe seeks to recover—and from taxpayer dollars—in his motion.

---

[5]Those 68.75 hours include Mr. Herlong's 8.5 hours noted above, as well as the remaining 60.25 hours expended on efforts associated with the preliminary injunction and attributable to Mr. Newar.  *See* **Ex. A** (Nichols Decl.) ¶ 13.

## CONCLUSION

For the foregoing reasons, HISD respectfully requests this Court deny Monroe's application and motion. In the alternative, HISD requests that the Court not award any amount of fees in excess of $24,062.50.

Respectfully submitted,

**BUTLER SNOW LLP**

By: */s/  Eric J.R. Nichols*
   Eric J.R. Nichols
   State Bar No. 14994900
   S.D. Tex. ID No. 13066
   1400 Lavaca Street, Suite 1000
   Austin, Texas 78701
   Telephone:  (737) 802-1800
   Facsimile:  (737) 802-1801
   eric.nichols@butlersnow.com

   **ATTORNEY-IN-CHARGE**
   **FOR DEFENDANT HISD**

**OF COUNSEL:**
Karson K. Thompson
State Bar No. 24083966
S.D. Tex. ID No. 2878342
1400 Lavaca Street, Suite 1000
Austin, Texas 78701
Telephone:  (737) 802-1800
Facsimile:  (737) 802-1801
karson.thompson@butlersnow.com

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2021, I caused a copy of the foregoing to be served upon all counsel through the Court's CM/ECF system.

*/s/ Eric J.R. Nichols*
Eric J.R. Nichols