United States District Court
Southern District of Texas
**ENTERED**
November 03, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GERRY MONROE,                          §
                                       §
        Plaintiff,                     §
                                       §
v.                                     §        CIVIL ACTION NO. H-19-1991
                                       §
HOUSTON INDEPENDENT                    §
SCHOOL DISTRICT,                       §
                                       §
        Defendant.                     §

<u>ORDER AWARDING ATTORNEY'S FEES</u>

Pending is Plaintiff Gerry Monroe's Motion for Attorneys' Fees, Costs, and Expenses (Document No. 132), to which Defendant Houston Independent School District has filed its Opposition. Plaintiff contends that it is the prevailing party in this case under the holding of <u>Dearmore v. City of Garland</u>, 519 F.3d 517, 524 (5th Cir. 2008), and seeks in total approximately $375,400.00 for attorney's fees and for paralegal time that he categorizes as "expenses." HISD opposes any award or, begrudgingly, suggests that Plaintiff be allowed only a small fee not to exceed $24,062.50.

In its Response, HISD argues that Plaintiff's counsel's hourly rates are not reasonable at $500 per hour, that Plaintiff did not prevail in this litigation "in any meaningful sense," that any fee award should be limited to fees incurred between November

25, 2019 and March 10, 2021, that Plaintiff should not receive any fees related to claims on which he did not prevail, that Plaintiff's counsel should not receive an enhancement to the lodestar amount, that co-counsel to Plaintiff's lead counsel should be credited with spending no more than 8.5 hours on the case, and that no award should be allowed for the time expended by a paralegal who assisted Plaintiff's counsel on the case.[1]  These arguments will be considered in the context of the controlling issues: (1) Is Plaintiff a prevailing party entitled to recover attorney's fees under 42 U.S.C. § 1988(b)?  (2) If so, what time and labor should be included when determining Plaintiff's counsel's lodestar amount?  (3) What reasonable hourly rate should be applied in this community to the compensable hours in determining Plaintiff's counsel's lodestar amount?  And (4) Is an upward adjustment of the lodestar amount warranted under the circumstances of this case?

---

[1] HISD also objects to Plaintiff's submission of an independent expert opinion in support of Plaintiff's fee application because the expert was not disclosed when experts on the merits were to be identified.  The objection is DENIED.  The Court never expected to hear witnesses on attorney's fees during the trial on the merits.  This is a subject routinely reserved until after the services have been rendered, the case has been decided, and the prevailing party is known.  It is then that an opinion can best be formed on the reasonableness of attorney's fees.

<u>Prevailing Party</u>

In <u>Dearmore v. City of Garland</u>, 519 F.3d 517 (5th Cir. 2008), the court considered as an issue of first impression in the Fifth Circuit whether a Plaintiff qualifies as a "prevailing party" under § 1988(b) when he obtains a preliminary injunction based on the district court's unambiguous indication of probable success on the merits of his claim and the defendant subsequently moots the case before trial in direct response to the court's preliminary injunction order. <u>Id.</u> at 521. Under the facts of <u>Dearmore</u>, which closely parallel the facts in the instant case, the Court of Appeals held that to qualify as a prevailing party, the plaintiff

> (1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits.

<u>Id.</u> at 524. The plaintiff in <u>Dearmore</u> met the test. He had won a preliminary injunction against the City's enforcement of a city ordinance on the basis that it would violate Dearmore's Fourth Amendment rights; the preliminary injunction was based upon the trial court's assessment that Dearmore would likely succeed on the merits of his Fourth Amendment claim, not because of a balancing of the equities in his favor; and the district court's grant of the preliminary injunction directly caused the City to amend the

3

offending portion of the ordinance, which mooted the case and prevented Dearmore from obtaining final relief on the merits. Id. at 524-26.

The facts in this case are strikingly similar. At a hearing on December 10, 2019, and consistent with a remand directive from the Fifth Circuit, this Court received additional evidence and arguments of counsel (which supplemented evidence submitted at the preliminary injunction hearing held five months before) and preliminarily enjoined HISD from punishing Plaintiff either by removal from HISD facilities or by issuing him Criminal Trespass Warnings if he engaged in otherwise lawful "derogatory" speech/expression, "offensive" speech/expression, "name calling," and similar expressive conduct containing offensive or derogatory remarks about any HISD Board member or employee, when Plaintiff was on HISD's facilities or campuses. This Court explained its merit-based finding in several pages of discussion, and was unequivocal in holding that Plaintiff had established a likelihood of success on the merits as to his First Amendment claim.[2] Like Dearmore, the Court's injunction was "based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff." 519 F.3d at 524.

---

[2] *See* Injunction Order of December 11, 2019 at pages 11-15.

The third element of <u>Dearmore</u>, namely, Defendant's ultimate change of position that precluded a judgment on the merits, took a longer time in coming here than in <u>Dearmore</u>. In <u>Dearmore</u>, the City of Garland repealed its offending ordinance within two weeks after issuance of the preliminary injunction. <u>Id.</u> at 526. Here, however, HISD for a long time took no action to remove the restraints it had announced on Plaintiff's First Amendment rights. Thus, the preliminary injunction remained in full force and effect for one and one-half years, which, of course, effected a material alteration in the legal relationship between HISD and Plaintiff. On March 10, 2021, HISD delivered a letter to Plaintiff stating that it "hereby retracts, vacates, and nullifies the July 15, 2019 letter" with respect to the restraints that were the basis for the Court's issuance of the preliminary injunction. By then, Plaintiff remained skeptical and feared that HISD would later revive the retracted language and Plaintiff therefore argued that HISD had not successfully borne the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." <u>Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.</u>, 120 S. Ct. 693, 709 (2000). This issue was resolved at trial, when HISD called as its witnesses the author of HISD's series of letters to Monroe and HISD's School Board president. The Court found from a preponderance of the evidence that HISD would not punish or retaliate against Plaintiff

in the future on the basis of his engaging in the previously forbidden constitutionally protected speech or expressive conduct, and hence HISD's change of position had successfully mooted Plaintiff's case. HISD had accepted the alteration in the legal relationship between the parties that had been imposed by the preliminary injunction, and the Court concluded that Plaintiff was no longer at risk of punitive action or criminal trespass warnings for exercising recognized First Amendment speech and expression rights when addressing the School Board or other officials in meetings on HISD campuses. Plaintiff is a § 1988(b) prevailing party.[3]

## The Johnson Factors

In exercising its discretion in awarding attorney's fees and expenses against a party, this Court has given careful attention to the guidelines set forth in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), which is the principal foundation for that familiar body of Fifth Circuit law regarding awards of attorney's fees.[4] The lodestar method first requires

---

[3] Perhaps worth noting, as the Fifth Circuit did in Dearmore, is that a lack of appeal by a defendant (here, HISD) who accedes to a preliminary injunction is also "a factor favoring a finding of prevailing party status." Dearmore, 519 F.3d 517, at 524 n.3.

[4] The Johnson factors are: (1) the time and labor required to represent the client or clients' (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal

determining "the compensable hours from the attorneys' time records, including only hours reasonably spent." Shipes v. Trinity Indus., 987 F.2d 311, 319 (5th Cir. 1993). The court then "must select an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases." Id. These two figures are multiplied together to produce the lodestar amount. Id. The lodestar amount may then be adjusted upward or downward based on any of the twelve factors listed in Johnson, 488 F.2d at 717-19, that have not already been considered in calculating the lodestar amount. Shipes, 987 F.2d at 320. These two lodestar factors are at the center of the parties' attorney's fees dispute.

## Johnson Factor: The Time and Labor Required

According to Plaintiff's attorneys' itemized billing records, Plaintiff's lead counsel, Scott Newar, spent 569.25 hours on this case and his co-counsel Dennis Herlong, spent 46.50 hours. In an exercise of billing judgment, Mr. Newar eliminated approximately

---

services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the awards in similar cases. Johnson, 488 F.2d at 717-19.

15.75 hours that he considered unproductive in researching and drafting a motion and related pleadings to certify an interlocutory appeal of the Court's denial of Plaintiff's motion for summary judgment.   In further exercise of billing judgment, Mr. Newar reduced his billable hours across the board by five percent, which reduces his billable hours to 525.75 hours.   Thus, Mr. Newar requests that he be compensated for 525.75 net hours at the rate of $500/hour, for a fee of $262,875.00.[5] He requests compensation for Mr. Herlong in the amount of $23,250.00 (46.5 hours at $500/hour), and to all of this he requests a 25 percent upward adjustment from the lodestar in the amount of $71,540.63. Plaintiff's counsel includes in his total billable hours the time he spent on this litigation from Plaintiff's initial contact with him until the present, with the deletions mentioned above.

If any fees are to be awarded, HISD's counsel, Eric J.R. Nichols, contends they should be limited to the period beginning November 25, 2019 and ending March 10, 2021, which would result in a fee of $24,062.50 based on an hourly rate of $350/hour. Mr. Nichols's premise is that the Plaintiff should be awarded no fees for any time or labor devoted to the case before Plaintiff filed his Second Amended Complaint on November 26, 2019--the

---

[5] Mr. Newar deducted the five percent in dollars, but the Court for consistency deducts the five percent in billable hours.

Complaint that focused on the July 10, 2019 letter delivered to Plaintiff on the eve of the preliminary hearing injunction held July 11, 2019, and that he should receive no fees for any time and labor devoted to Plaintiff's case after March 10, 2021, when HISD delivered to Plaintiff a letter retracting the language of its July 15, 2019[6] letter that was the basis for the preliminary injunction.

This proposed window of time fails to recognize most of counsel's reasonable and necessary services, among other things, investigating the events that occurred at and after the April 11, 2019 School Board meeting that triggered the entirety of this litigation; doing necessary legal research and briefing, including on the constitutionality of HISD's original ban of Plaintiff from all its School Board meetings and campuses, and issuance of an official trespass warning notice, all of indefinite duration with Plaintiff being "permitted to petition [HISD] after the expiration of one calendar year" to consider if it would lift the ban; pretrial discovery exchanges; assembling evidence, preparing for

---

[6] The "July 15, 2019" letter was a revision of the "July 10, 2019" letter to delete an opening paragraph irrelevant to this order and the judgment in this case.  The July 10, 2019 letter was HISD's first pronouncement of its new speech restrictions on Plaintiff and its revised July 15, 2019 letter reiterated those restrictions verbatim.  Thus, whether reference is made to the July 10, 2019 letter or to the July 15, 2019 letter, HISD's constitutionally offensive restrictions on Plaintiff are identical.

and participating in the preliminary injunction evidentiary hearing held July 11, 2019 regarding infringement of Plaintiff's First Amendment rights based on HISD's ban of indefinite duration, which existed up until the eve of the hearing when HISD issued a modification of the ban and imposed a new set of First Amendment restrictions on Plaintiff; and perfecting an expedited appeal and briefing and arguing the case in the Fifth Circuit, which successfully achieved a remand of the case for further proceedings in which Plaintiff ultimately prevailed.  Likewise, HISD proposes to exclude reasonable and necessary services rendered by Plaintiff's counsel after March 10, 2021, including among other things, preparation of the proposed joint pretrial order required by the Court, including proposed findings of fact and conclusions of law; trial preparations and trial of the case; and preparation of Plaintiff's Motion for Attorney's Fees.

When the Court of Appeals remanded the cause for further proceedings, it specifically instructed this Court to:

> determine in the first instance whether and to what extent [Plaintiff] has adequately alleged a violation of the "existing HISD policy" or HISD's clarification thereof [in the July 15, 2019 letter] and, following the mandates of Rule 65, determine whether a preliminary injunction should issue.

Plaintiff thereupon filed his Second Amended Complaint and a second amended motion for preliminary injunction.  A supplementary

preliminary injunction evidentiary hearing was held, and on December 11, 2019, the Court issued the preliminary injunction that restrained HISD from punishing Plaintiff for exercising on HISD campuses certain First Amendment rights of speech and expression in lawful ways that HISD had advised him may result in his punishment, including the issuance of Criminal Trespass Warnings.

The Supreme Court has observed that, unlike Hollywood litigation, "in the real world, litigation is more complex, involving multiple claims for relief that implicate a mix of legal theories and have different merits. Some claims succeed; others fail. Some charges are frivolous; others (even if not ultimately successful) have a reasonable basis. In short, litigation is messy, and courts must deal with this untidiness in awarding fees." Fox v. Vice, 131 S. Ct. 2205, 2213-14 (2011).

The Supreme Court in Fox held that a rather narrow standard applies for recovery of attorney's fees by a prevailing defendant, quite unlike the recovery of attorney's fees by a prevailing plaintiff:

> [W]e have made clear that plaintiffs may receive fees under § 1988 even if they are not victorious on every claim. A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes. That "result is what matters," we explained in *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983): A court should compensate the

11

plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if "the plaintiff failed to prevail on every contention." *Ibid.* The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief: Such work "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Ibid.* (internal quotation marks omitted). But the presence of these unsuccessful claims does not immunize a defendant against paying for the attorney's fees that the plaintiff reasonably incurred in remedying a breach of his civil rights.

Id. at 2214.

HISD implicitly argues that its letter of July 15, 2019, mooted the claims that Plaintiff had initially brought on its facilities ban of Plaintiff. Perhaps in part, but the Court of Appeals remanded the case to the district court with instructions also to "decide whether HISD should be enjoined from enforcing its facilities ban on [Plaintiff] at the December 12 Board of Education meeting." This was part and parcel of the facilities ban that was a subject of the litigation from the start, except that HISD now said it was terminating its ban on December 31. (The other Fifth Circuit instruction on remand is quoted and discussed above at pages 10-11.)

The Supreme Court advises against trial courts becoming "green-eyeshade accountants." Fox, 131 S. Ct. at 2216. "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in

calculating and allocating an attorney's time." Id. Indeed, "litigation is messy," id. at 2214, and HISD has contributed more than its share to the messiness of this case. HISD unexpectedly shifted its position on the eve of the July 11, 2019 preliminary injunction hearing and issued a new set of speech restrictions on Plaintiff that did not come into clear focus until the Fifth Circuit's appellate review, but the legal services Plaintiff's counsel performed both before and after the July 11, 2019 hearing were inextricably related to HISD's varied infringements of Plaintiff's First Amendment rights and to the successful result ultimately achieved by Plaintiff.

The Court has made a detailed line-by-line review of the contemporaneous time records of Plaintiff's counsel and co-counsel, and finds--with the reductions in hours proposed by Plaintiff--that the attorney time and labor spent on this case for Plaintiff were reasonable and necessary to remedy HISD's infringement of Plaintiff's First Amendment rights.

## Johnson Factor: Customary Fees

Plaintiff's counsel, Scott Newar, is a well-credentialed Houston lawyer with approximately 30 years of experience. For 25 years he has been a solo practitioner and specializes in employment and civil rights issues. He has litigated dozens of cases in the Southern District of Texas, many including claims under the First

Amendment, Title VII of the Civil Rights Act of 1964, and other civil rights statutes. He testifies in his Declaration that for the past five years he has customarily charged fee-paying clients $500/hour for his work, that he has knowledge of the hourly rates charged by attorneys who represent clients in civil rights litigation in this District and that his customary rate of $500/hour is below the Southern District of Texas market rate for civil litigators with qualifications and experience comparable to his.

Mr. Newar's application includes a supporting Declaration of David Kahne, a lawyer of more than 30 years' experience, including the last 25 years in Texas. Mr. Kahne, who was not an attorney in this case, has had substantial litigation experience, including cases involving constitutional law issues with non-profit organizations actively engaged in the protection of First Amendment rights. He testifies that he knows the usual and customary rates for the type of litigation involved in this case, recognizes Mr. Newar is one of the very few lawyers in the Houston area who regularly accepts contingent fee cases to enforce First Amendment rights, and has acquaintance with some of Mr. Newar's briefs in other cases. After acquiring an overview of this case, Mr. Kahne is of the opinion that $500 is a reasonable hourly rate for Mr. Newar's services in this case.

14

Dennis Herlong, of counsel to Plaintiff in this case and second chair to Mr. Newar, is a well-credentialed Houston attorney with approximately 39 years of experience in this District. Mr. Herlong has served as Chair of the civil trial certification commission of the Texas Board of Legal Specialization, has chaired both the Houston Bar Association's Litigation Section and its Labor and Employment Section.  For the past 15 years he has customarily charged fee-paying clients $500/hour for legal representation in this District and has charged senior executives and managers a customary fee of $750/hour.  Mr. Herlong and Mr. Newar have worked together as co-counsel on numbers of matters during the past 15 years.  He is acquainted with rates being charged by attorneys practicing civil litigation in the United States District Court for the Southern District of Texas, and testifies that the requested rate of $500/hour for his services is in line with rates charged by attorneys with comparable skill, experience and reputation as his.

Mr. Newar has billed his paralegal at $100 per hour for services rendered in connection with his representation of Plaintiff in this case, which he includes as "expenses."  *See* Associated Builders and Contractors of La. v. Orleans Parish School Bd., 919 F.2d 374, 380 (5th Cir. 1990) ("All reasonable out-of-pocket expenses, including charges for . . . paralegal assistance, . . . are plainly recoverable in section 1988 fee

15

awards because they are part of the costs normally charged to a fee-paying client.").

HISD submits the Declaration of its own lawyer, Eric J.R. Nichols, a well-credentialed Texas lawyer for 32 years, in opposition to the hourly rates suggested by Plaintiff's lawyers, Mr. Newar and Mr. Herlong.  Mr. Nichols, an Austin lawyer with the law firm of Butler Snow, LLP, testifies that he is familiar with the reasonable and customary hourly rates charged by lawyers for various types of matters "in the Texas legal market in general as well as in urban areas such as Houston."  He testifies that during his firm's representation of HISD in this lawsuit his firm has billed HISD at hourly rates between $225-$350 per hour, which he regards as reasonable.  He acknowledges, however, that those rates are discounted because his firm represents a "*public,* governmental entit[y]" that "does not and should not command the type of billing rates . . . as *private* entities."[7]  Unlike Mr. Nichols, Mr. Newar represents a *private* citizen.  Nonetheless, Mr. Nichols contends without citation to any authority that Mr. Newar's rates should be reduced by the fact that Plaintiff's *opposing party* is a public entity.  Such a reduction is not warranted on the facts of this case.  Mr. Nichols supports his Declaration with a State Bar of Texas analysis of lawyers' median hourly rates in 2015 based upon

---

[7] Document No. 133-1, at 4 of 38.

a questionnaire sent out state-wide by the State Bar of Texas to about 12,000 of its 98,000 lawyers, asking them to report their hourly rates.  Lawyers in the Houston metropolitan area had the lowest response rate in the entire state, at only 9.6%.  These kinds of out-of-date median hourly rates based on a very small segment of the Bar that self-selects to spend time responding to such a survey are of no material help in determining a reasonable and customary hourly rate for experienced lawyers in a First Amendment case such as this.

Several other Johnson factors besides counsel's time and labor and customary fees in this community tend to support the hourly rate that Mr. Newar requests, among them the difficulty of litigating constitutional issues that evolved as HISD shifted its position, the experience, reputation, and ability of Plaintiff's counsel, and the undesirability of taking on the civil rights case of a community activist whose practice is regularly to attend School Board meetings to voice emphatically his criticisms of School Board members, various school personnel, and public school policies.

Based upon the submissions, and informed by 60 years of experience in this profession--half as a trial lawyer and half as a United States District Judge--and having presided over this case from beginning to end, the Court finds that $500/hour for Mr. Newar is well within the range of attorneys' fees customarily charged in

17

this community in this kind of litigation by lawyers of comparable experience and skill as that of Mr. Newar.

A fee of $500/hour for Mr. Herlong, given his ability and experience, would be appropriate if he were lead counsel.  Mr. Herlong's role, however, was as second chair to Mr. Newar in court proceedings, including the two preliminary injunction hearings and the trial, and according to his time records, as a collaborator, a sounding-board, and a strategist on Plaintiff's briefs, appeal, and trial preparations.  The second chair serves an important role in a challenging case, but a capable second chair ordinarily will not have the long experience of a lead counsel as does Mr. Herlong and thus will not command a fee equal to lead counsel.  For that reason alone, Mr. Herlong's hourly rate is discounted by 20 percent to $400/hour, a rate commensurate with that of a well-qualified junior counsel/second chair.

The Court finds that Mr. Newar's appropriately billed hours therefore should be compensated at $500/hour and, Mr. Herlong's (for this case only in light of his secondary role) at $400/hour. Mr. Newar's billing of his experienced legal assistant's time at $100/hour is also well within the range of reasonableness in this community.

<u>Consideration of Enhancement</u>

The lodestar amount may be adjusted upward or downward based on any of the 12 factors listed in <u>Johnson</u> that have not already been considered in calculating the lodestar amount. <u>Shipes</u>, 987 F.2d at 320. Plaintiff argues for an upward adjustment in the lodestar based upon "HISD's long-running, aggressive defense of its unconstitutional conduct and the need to incentivize other private practitioners to accept such cases."[8] For this, Plaintiff requests a 25% upward adjustment in the lodestar. These matters have been considered in calculating the lodestar. Having considered the entirety of the case and each of the <u>Johnson</u> factors, the Court finds that the lodestar amount determined herein fully and adequately compensates Plaintiff for reasonable and necessary attorney's fees incurred in this action without adding an enhancement to that lodestar amount.

Accordingly, the Court finds that Plaintiff should be awarded for compensation of his attorneys the following:

| | | |
|---|---|---|
| Mr. Newar | 525.75 hours at $500/hour | $262,875.00 |
| Mr. Herlong | 46.5 hours at $400/hour | $ 18,600.00 |
| Mr. Newar's Legal Assistant | | |
| | 177.25 hours at $100/hour | $ 17,725.00 |
| | **TOTAL:** | **$299,200.00** |

---

[8] Document No. 132, at 13 of 16.

In addition, Plaintiff is entitled to recover his taxable costs of court.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 3rd day of November, 2021.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE